| | | |
|---|---|---|
| PAUL AND ROXANNE BOBICK, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| v. | ) | Case No. 3:18-cv-00514 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| WYNDHAM WORLDWIDE OPERATING, | ) | |
| INC., WYNDHAM VACATION RESORTS, | ) | |
| INC., and WYNDHAM VACATION | ) | |
| OWNERSHIP, INC., DANIEL LUGLAN, | ) | |
| KELLY WALTHOUR, DAVIS LABELLE, | ) | |
| and JOHN DOES 1-100, | ) | |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss pursuant to Rules 12(b)(2), 12(b)(3), and

12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 5), filed by the following defendants:

Wyndham Worldwide Operations, Inc. ("WWO"), Wyndham Vacation Resorts, Inc. ("WVR"),

and Wyndham Vacation Ownership, Inc. ("WVO") (collectively, the "Wyndham Defendants").

The plaintiffs, Paul and Roxanne Bobick, have filed a Response (Docket No. 16), to which the

Wyndham Defendants have filed a Reply (Docket No. 19). For the reasons discussed herein, the

Wyndham Defendants' motion will be granted.

## BACKGROUND[1]

The Bobicks are a married couple who reside in North Carolina. WWO is a Delaware

corporation with its principal place of business in New Jersey. It is a hospitality business that

franchises and manages hotels throughout the United States. WVR and WVO are Delaware

---

[1] The facts are viewed in the light most favorable to the Bobicks.

1

corporations with principal places of business in Florida. WVO is the parent company of WVR. WVR markets, sells, and finances Vacation Ownership Interests ("VOIs"), provides property management services to property owners' associations, and develops vacation ownership resorts. WVO, a member of WWO's family of companies, is the world's largest vacation ownership business. WVO develops, markets, and sells VOIs, provides consumer financing to owners, and manages properties. All of the Wyndham Defendants are registered to conduct business in Tennessee. Club Wyndham Access ("CWA") is a time share program that contains real property sites, known as "component sites," throughout the country, including in Davidson County, Tennessee.

The Wyndham Defendants own and/or operate at least four timeshare properties and other resorts located in Tennessee: Wyndham Nashville, Wyndham Resort at Fairfield Glade, Wyndham Smoky Mountains, and Wyndham Vacation Resorts Great Smoky Mountains Lodge. The Wyndham Defendants have Tennessee offices in Nashville, Crossville (Fairfield Glade), and Sevierville, and engage in large scale marketing and sales activities within the state. These activities include, but are not limited to, direct mail, email, telemarketing, internet distribution channels, and partnerships with travel agencies. The Wyndham Defendants also filed several Tennessee Timeshare Public Offering Statements with the Tennessee Real Estate Commission and annually submit renewal applications to the Commission that include payments for renewal fees.

On May 20, 2014, while vacationing at a Wyndham Defendants resort in Flagstaff, Arizona, the Bobicks were invited to what they were told was a short presentation in exchange for a gift. In fact, the presentation was a "long, high pressure sales presentation." (Docket No. 1-1 at 12.) Wyndham Defendant sales agents convinced the Bobicks to purchase a VOI in the CWA program totaling roughly $70,000. The VOI allowed the Bobicks access to Wyndham Defendant

resorts around the country, including three of the Tennessee resorts. One sales agent told the Bobicks that their timeshare was an investment that would increase in value, without corresponding increases in maintenance fees. The agent did not accurately represent their contractual rights, incorrectly telling them that the only way to end their involvement in the program was after five years. In fact, the contract allowed for a 7-day post-sale period in which the contract could be cancelled. He told them to disregard the high interest rate, as they could easily refinance with their bank, and that they could cash in points for maintenance fees at a falsified rate of exchange. He assured them that their then-18-year-old son, a student at a Tennessee university, could use their timeshare without their presence, despite this being a violation of Wyndham Defendants' policy. He also guaranteed that he would personally manage their account going forward. The Bobicks summarize the false or misleading statements made by Wyndham Defendant sales agents at the meeting in the following ways:

    a)    Made representations to the Plaintiffs as to the availability of a resale program offered by or on behalf of Wyndham or its affiliate without the program being made a part of the offering and submitted to the commission;

    b)    Made representations that the timeshares offered to the Plaintiffs were limited as to quantity or restricted as to time without the numerical quantity and/or time applicable to the offer being conspicuously disclosed;

    c)    Made statements concerning the availability of the timeshares being sold to the Plaintiffs at a particular price without properly disclosing the number of such timeshares then for sale at the price being disclosed or set forth to the Plaintiffs;

    d)    Misrepresented the size, nature, extent, qualities, or characteristics of the accommodations or facilities which comprise the timeshares being purchased by the Plaintiffs;

    e)    Misrepresented to the Plaintiffs the nature or extent of any services incident to the timeshares purchased by the Plaintiffs,

> including but not limited to rental, advisory, exchange and
> resell services;
>
> f)      Misrepresented to the Plaintiffs that certain facilities and/or
> services available to the Plaintiffs were for their exclusive use;
>
> g)      Made misleading and/or deceptive representations to the
> Plaintiffs with respect to the contents of the timeshares and/or
> timeshare programs being sold to the Plaintiffs, as well as
> misleading and/or deceptive representations regarding the
> purchase contract, the purchaser's rights, privileges, benefits
> or obligations under the Plaintiffs' timeshare contracts;
>
> h)      Misrepresentations to the Plaintiffs regarding the conditions
> under which the Plaintiffs may participate in one or more
> exchange, rental or resell programs as enumerated above . . . .

(Docket No. 1-1 at 37–38.)

On August 19, 2014, the Bobicks were vacationing at a Wyndham Defendants property in Nashville, Tennessee. A Wyndham Defendants sales agent came to the Bobicks' room and told them they could lower their interest rates on their recently-purchased timeshare if they attended a half-hour meeting with the agent. The meeting turned into a three-hour long, "high-pressure" sales presentation. The Bobicks contend that the same misrepresentations that were made to them at the Arizona meeting were again made to them at the Tennessee meeting. For example, the Bobicks allege that they were again told that their 18-year-old son could use any property they purchased without their presence. In addition, the Bobicks contend they were misled about the length and nature of the meeting. The Bobicks did not purchase a timeshare interest as a result of, or subsequent to, the Nashville meeting. They allege that they were damaged in the form of the time they lost participating in the meeting and the mental stress and suffering that resulted from the meeting going longer than promised, causing them to miss lunch.

On February 9, 2018, the Bobicks filed suit in Tennessee Chancery Court, alleging the following causes of action: intentional misrepresentation; fraud in the inducement; breach of

4

contract; negligent misrepresentation; negligent hiring, training, and supervision, and retention; promissory fraud; violation of the Tennessee Timeshare Act, Tenn. Code Ann. § 66-32-101 *et seq.* ("TTA"); violation of the Arizona Timeshare Act, A.R.S. § 33-2201 *et seq.*; anticipatory breach; unconscionability; contract of indefinite duration, and; injunctive relief. On June 4, 2018, the case was removed to this court.

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at

679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id*. In any proceeding, however, the party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits or other preliminary materials, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Theunissen*, 935 F.2d at 1458. In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

Under Fed. R. Civ. P. 12(b)(3), a defendant may move to dismiss a case for improper venue. On such a motion, it is the plaintiff's burden to show that venue is proper. *Gone to the Beach, LLC v. Choicepoint Servs.*, 434 F. Supp. 2d 534, 537–38 (W.D. Tenn. 2006). If the district court finds that the case is "in the wrong division or district" the court "shall dismiss" the case, or, "if it be in the interest of justice," the court may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## ANALYSIS

i.  Tennessee Timeshare Act

The Bobicks argue that, because this court has jurisdiction to hear their claim brought under the TTA, exercise of jurisdiction over their related claims is proper, even if the court would otherwise lack jurisdiction to hear those claims. The Bobicks' TTA claim is based on various alleged misrepresentations made at the August 19, 2014 Nashville meeting. Most of these alleged misrepresentations concerned the Bobicks' rights and privileges under their potential timeshare purchase, e.g. that the Bobicks' then-18-year-old son could use the timeshare without their presence or that the timeshare was available for the exclusive use of the Bobicks. The Bobicks also allege that they were misled about the duration and nature of the meeting. The TTA authorizes a civil right of action against a developer who violates the statute. *Overton v. Westgate Resorts, Ltd., L.P.*, No. E2014-00303-COAR3CV, 2015 WL 399218, at *10 (Tenn. Ct. App. Jan. 30, 2015) (citing Tenn. Code Ann. § 66–32–118). Any individual "adversely affected by the violation has a claim for appropriate relief." Tenn. Code Ann. § 66–32–118. "Adversely affected" is not defined in the statute.

The Bobicks do not allege that they suffered an ascertainable loss of money or property as a result of the Nashville meeting. They concede that the only purchase they made from the Wyndham Defendants occurred before the Nashville meeting. (Docket No 16-2 at 1 (Declaration

of Paul and Roxanne Bobick).)  Instead, the Bobicks point to their mental stress caused by the high pressure sales meeting, their suffering as a result of missing lunch, and their time lost as the injuries they suffered.  But these injuries were suffered as a result of misrepresentations about the nature and duration of the meeting.  They allege that they would not have attended the meeting had they not been told that it would last only thirty minutes or that the meeting would be about how to lower their interest rate when, in fact, it was a high-pressure sales pitch.  These misrepresentations are not proscribed by the TTA.  Wyndham Defendant agents did make TTA-proscribed misrepresentations at the meeting, but they did not injure the Bobicks because the Bobicks did not make a purchase as a result.  The Bobicks identify no case in which a TTA claim has been found actionable where the only injuries alleged were the time and stress associated with listening to a misrepresentative presentation.  The Bobicks therefore fail to state a claim for violation of the TTA, and their statutory claim will be dismissed.  Having dismissed the TTA claim, the court must determine whether it has personal jurisdiction over the Bobicks' remaining claims.

        ii.        General Jurisdiction

It is well established that federal courts follow state law to determine the bounds of personal jurisdiction over a defendant.  "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations."  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).  Tennessee statutes authorize the exercise of jurisdiction over nonresident defendants on "[a]ny basis not inconsistent with the constitution of this state or of the United States."  Tenn. Code Ann. §§ 20-2-214(a), 225(2).  These statutes have been construed to expand the jurisdictional reach of Tennessee courts "as far as constitutionally permissible."  *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 384 (Tenn. 2015), *cert. denied sub nom. Fitch Ratings, Inc. v. First Cmty. Bank, N.A.*, 136 S. Ct. 2511 (2016).  The question here is

whether this court's exercise of jurisdiction over the Wyndham Defendants would "comport[ ] with the limits imposed by federal due process." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). General personal jurisdiction over a corporate defendant is appropriate only where "the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum state." *Daimler*, 134 S. Ct. at 751.

The Bobicks argue that the Wyndham Defendants have continuous and systemic contacts with Tennessee sufficient to confer general jurisdiction. In support, they point to the four resorts that the Wyndham Defendants own and manage in the state, the hundreds or thousands of Tennesseans the Wyndham Defendants employ, the Wyndham Defendants' large scale marketing and sales activity in the state, the Public Offering Statements filed by the Wyndham Defendants with the Tennessee Real Estate Commission, and the several offices that the Wyndham Defendants maintain in the state.

These arguments are similar to those set forth by the plaintiff in *First Community. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369 (Tenn. 2015). In *First Community Bank*, the Tennessee Supreme Court considered whether three rating agencies were subject to general jurisdiction in Tennessee. *Id*. at 384. The plaintiff argued that each rating agency "d[id] millions of dollars of business per year in Tennessee," had "engaged in 'longstanding business' in

Tennessee, including maintaining offices and performing ratings services there," and "distribute[d] various print materials in Tennessee." *Id.* at 386. The court found that the agencies were not subject to general jurisdiction in Tennessee, explaining that "Tennessee does not serve as the formal place of incorporation or principal place of business for any of the three Ratings Agencies," and finding that "the evidence provided by the Plaintiff is insufficient to support the conclusion that any of the Ratings Agencies' relationships with Tennessee were more substantial than their relationship with any of the other numerous forums in which the Ratings Agencies do business." *Id.* at 386–87. The court concluded that, "[w]hile the contacts alleged by the Plaintiff certainly established that the Ratings Agencies engage in business in Tennessee, nothing in the record supports the conclusion that any of the Ratings Agencies' contacts with Tennessee are so substantial or of such a nature as to render them 'essentially at home' here." *Id.* at 387.

Applying these principles, the court lacks general jurisdiction over the Wyndham Defendants. None of the Wyndham Defendants is "at home" in Tennessee: WWO is incorporated in Delaware with its principal place of business in New Jersey; WVR and WVO are incorporated in Delaware with principal places of business in Florida. The Wyndham Defendants do have contacts in Tennessee via the resorts they own, the Tennesseans they employ, the offices they maintain, and the marketing efforts undertaken in the state. But, "[u]nder the Supreme Court's recent opinions in *Goodyear* and *Daimler*, merely 'doing business' in a forum state clearly is not alone sufficient to subject a nonresident corporation to general jurisdiction there." *Id.* at 386. Instead, nonresident corporations must have contacts with the forum state "more substantial than their relationship with any of the other numerous forums in which [they] do business." *Id.* at 387. The Bobicks' Complaint acknowledges that the Wyndham Defendants are, collectively, the world's largest timeshare company and the world's largest vacation ownership business,

franchising and managing hotels throughout the United States. The Bobicks do not contend that the Wyndham Defendants' contacts with Tennessee are atypical relative to the companies' contacts in other states or that senior management decisions are made in Tennessee. Alleging only that the Wyndham Defendants do considerable business in Tennessee—without alleging that its business here is comparatively more significant than its business around the country—is insufficient to establish that they are subject to general jurisdiction here. *See Daimler*, 134 S. Ct. at 762 n.20 ("[T]he general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.' A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.") (internal citations omitted). Moreover, the Wyndham Defendants' Tennessee operations are collectively comparable to those of the rating agencies in *First Community Bank*, which the Tennessee Supreme Court found to fall "woefully short" of establishing general jurisdiction. *First Cmty. Bank*, 489 S.W.3d at 387. Their activity here does not constitute an "exceptional case," where "a corporation's operations in a forum [state] other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporations at home in that state." *Id*. at 386.

In support of their general jurisdiction argument, the Bobicks rely on a recent Tennessee Court of Appeals decision, *J. Alexander's Holdings, LLC v. Republic Servs., Inc*., No. M2016-01526-COA-R3-CV, 2017 WL 1969763, at *4 (Tenn. Ct. App. May 12, 2017). In that case, the Court of Appeals found general jurisdiction over a national waste removal corporation based on a relatively small number of contacts with Tennessee: four agreements for waste removal services in Tennessee that were negotiated, signed, and invoiced in Tennessee. *Id*. at *5. The court relied upon the Tennessee Supreme Court's decision in *First Community Bank* but undertook no analysis

of how the defendant corporation's four waste removal contracts in Tennessee compared with its business around the country. *Id.* Nor did the court address how contracts for waste removal at only four restaurants could be so substantial as to render the defendant at home in Tennessee, a finding seemingly in tension with *First Community Bank,* in which ratings agencies doing up to $60 million of annual business here were held to have contacts insufficient to confer general jurisdiction. "A federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)). To the extent that the Court of Appeals' opinion in *J. Alexander's Holding* is inconsistent with this court's reading of the Tennessee Supreme Court's decision in *First Community Bank*, the latter will guide this court's analysis. As explained above, the Tennessee Supreme Court's decision in *First Community Bank* counsels against a finding of general jurisdiction here.

iii.     Specific Jurisdiction

The assertion of specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Brown*, 564 U.S. at 918 (internal quotation marks and citations omitted). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). The federal and Tennessee minimum contacts analysis merge into a federal due process analysis because Tennessee's long-arm statute reaches to federal constitutional limits. *First Cmty. Bank*, 489 S.W.3d at 384. The court must therefore apply the three-part *Mohasco* test set forth by the Sixth Circuit. *See S. Mach. Co. v.*

*Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The *Mohasco* test has three elements, all of which must be met for specific personal jurisdiction to be found:

> (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state."
>
> (2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state.
>
> (3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

*Id.*

At issue in this case is the second *Mohasco* element: whether the Bobicks' causes of action arise from the Wyndham Defendants' Tennessee contacts. The Bobicks argue that a finding of specific jurisdiction is appropriate because they "purchased a timeshare wherein services are to be rendered to them in Davidson County at the Nashville Resort." (Docket No. 16 at 5.) They explain that a significant reason for their purchase of their VOI was the ability to stay at the different component sites, including the one in Nashville, so that they could visit their son. The Bobicks maintain that the ability to stay at the Nashville resort was "very important" to them and "the main reason they purchased" CWA access. (Docket No. 16-2 at 2.) The Bobicks note that they have in fact been provided services at the Nashville resort, where they have stayed using their CWA points. Thus, they argue, their claims arise from the Wyndham Defendant's contacts with Tennessee.

The "arising from" prong is met "if a defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact."

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000).  To satisfy this prong, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action."  *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014).  The prong "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'"  *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco*, 401 F.2d at 384 n. 27)).  The guiding principle for district courts is to "look to where the operative facts of the controversy arose."  *Calphalon Corp.*, 228 F.3d at 724.

Most of the Bobicks' causes of action arise from conduct that did not take place in Tennessee.  Their claims for breach of contract (Count III), promissory fraud (Count VI), violation of the Arizona Timeshare Act (Count VIII), anticipatory breach (Count XI), unconscionability (Count X), contract of infinite duration (Count XI), and injunctive relief (Count XII) arise exclusively out of the Wyndham Defendants' conduct in Arizona.[2]  The Wyndham Defendants fraudulently induced the Bobicks to purchase their VOI in Arizona.  They failed to provide booking facilitation and support services in Arizona, breaking promises made to the Bobicks in Arizona.  They made misleading promises in Arizona about how timeshare points could be utilized, what the Bobicks' maintenance fees would be, and how the Bobicks could get out of the program.  They rushed and pressured the Bobicks to sign legal documents quickly at the end of a long meeting in Arizona.  No actions undertaken by the Wyndham Defendants in Tennessee contributed to the

---

[2] The Bobicks' claim for anticipatory breach is based on the Wyndham Defendants freezing the Bobicks' account in response to a demand letter sent by the Bobicks.  It is not clear where this cause of action arises from.  However, the Complaint does not allege any facts suggesting that this claim is connected in any way to Tennessee, where neither the Bobicks nor the Wyndham Defendants reside.

factual allegations underlying these claims. This is clearly distinguishable from cases where operative facts arose from a defendant's activities in the forum state. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 892 (6th Cir. 2002) (finding the "arising from" requirement of *Mohasco* satisfied where the defendant's activities in the forum state caused the plaintiff's economic injury); *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988) ("Clearly the cause of action herein, if one exists, arose from, was 'made possible' by, and lies in the 'wake' of the application process, much of which occurred in [the forum state].").

Nonetheless, the Bobicks contend that these claims did arise in Tennessee. They argue that Wyndham Defendants' Tennessee contacts are related to their claims because the ability to use the Nashville resort was a primary factor in making the Arizona purchase. But the plaintiffs' contemplated place of performance is not determinative. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). They further argue that their claims arose out of the Wyndham Defendants' Tennessee contacts because the Wyndham Defendants' actions in Arizona impacted the Bobicks' ability to use their access to the Nashville resort. *See* (Docket No. 16 at 7 ("It does not matter where they purchased as the contract relates in part to Nashville property and services to be rendered there. Therefore, Plaintiffs were injured at least partially in Nashville, Tennessee, when, among other things, they were misled about their being able to refinance their timeshare contract that allowed them to use and possess the Nashville, Tennessee property, and the services which were to be provided there.").) But this argument misses the mark. That the Bobicks—North Carolina residents—were in some way impacted in Tennessee by the Wyndham Defendants' actions in Arizona is insufficient to establish that the operative facts of the Bobicks' claims arose out of Tennessee. The Wyndham Defendants' misrepresentations about refinancing options deprived the Bobicks of benefits of a bargain made in Arizona. The Wyndham Defendants cannot

be haled into court to account for those misrepresentations in every state where that bargain conferred some benefit upon the Bobicks. Indeed, under the Bobicks' approach, the Wyndham Defendants would be subject to specific jurisdiction in every state in which the Bobicks' VOI interest was marginally affected, i.e. every state in which the Wyndham Defendants have a resort. Even under the lenient standard of the second *Mohasco* prong, such a result would not comply with due process. "It is not enough that there be some connection between the in-state activity and the cause of action—that connection must be *substantial*." *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 472–73 (6th Cir. 2012) (emphasis in original).

Three of the Bobicks' causes of action do allege operative facts arising from the Wyndham Defendants' contacts with Tennessee: Intentional Misrepresentation (Count I),[3] Negligent Misrepresentation (Count IV), and Negligent Hiring, Training, Supervision, and Retention (Count V). Specifically, the Bobicks allege that they were injured as a result of misrepresentations made in the August 19, 2014 Nashville meeting. However, the allegations stemming from the Nashville meeting cannot sustain any of these causes of action. Tennessee follows the Restatement approach in defining the cause of action for intentional and negligent misrepresentation. *Hodge v. Craig*, 382 S.W.3d 325, 345 (Tenn. 2012). Under the Restatement, a defendant is "subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information." Restatement (Second) of Torts § 552 (1977). The Bobicks do not allege any pecuniary loss as a result of the Nashville meeting. They concede that no purchase was made following the Tennessee meeting. They therefore cannot sustain a claim for intentional or negligent misrepresentation based on the

---

[3] In Tennessee, fraudulent inducement is the same cause of action as intentional misrepresentation, with the additional element that a forward-looking promise is required. *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 653 (E.D. Tenn. 2011). Because that element is not relevant to the analysis here, the Bobicks' claim for fraudulent inducement (Count II) will be treated as consolidated with their claim for intentional misrepresentation.

Nashville meeting. This is fatal to their negligent hiring claim, which requires a viable underlying negligence cause of action. "A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he or she establishes, *in addition to the elements of a negligence claim*, that the employer had knowledge of the employee's unfitness for the job." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 56 (Tenn. Ct. App. 2013) (emphasis added). Because the Bobicks cannot establish a pecuniary injury, they cannot establish the underlying elements of their negligent misrepresentation claim upon which their negligent hiring claim is predicated. The Bobicks therefore do not state any claim based on the Wyndham Defendants' actions in Tennessee. Thus, this court lacks jurisdiction over the Wyndham Defendants, and the Bobicks' claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Wyndham Defendants' Motion to Dismiss is hereby **GRANTED**.

A separate order will issue.

It is so ORDERED.

ENTER this 24th day of September 2018.

_____
ALETA A. TRAUGER
United States District Judge